# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DAVID CHRISTOPHER CRUZ,<br><br>Petitioner,<br><br>v.<br><br>PATRICIA VASQUEZ, Warden,<br><br>Respondent. | Case No.: 16cv3106-AJB (BLM)<br><br>**(1) REPORT AND RECOMMENDATION RE DENIAL OF PETITION FOR WRIT OF HABEAS CORPUS**<br><br>**(2) ORDER DENYING REQUEST FOR EVIDENTIARY HEARING** |

## I. INTRODUCTION

Petitioner David Christopher Cruz ("Petitioner" or "Cruz"), a state prisoner proceeding pro se, has filed a Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254, challenging his San Diego Superior Court conviction in case number SCE309627. (Pet. at 1, ECF No. 1 "Pet.")[1] Cruz also requests an evidentiary hearing. (*Id.*) The Court has reviewed the Petition, the Answer and Memorandum of Points and Authorities in Support of the Answer, the Traverse, the lodgments, and all the supporting documents submitted by both parties. For the reasons discussed below, the Court **DENIES** the request for an evidentiary hearing and **RECOMMENDS** the Petition be **DENIED**.

---

[1] Page numbers for docketed materials cited in this Report and Recommendation refer to those imprinted by the court's electronic case filing system.

## II. FACTUAL BACKGROUND

This Court gives deference to state court findings of fact and presumes them to be correct; Petitioner may rebut the presumption of correctness, but only by clear and convincing evidence. *See* 28 U.S.C. § 2254(e)(1) (West 2006); *see also Parke v. Raley*, 506 U.S. 20, 35-36 (1992) (holding findings of historical fact, including inferences properly drawn from those facts, are entitled to statutory presumption of correctness). The following facts are taken from the California Court of Appeal opinion:

> In early 2011, Cruz began dating Sharika Summers. Shortly thereafter, Cruz offered to care for Summers's infant son, Cordero Cisneros, Jr., so Summers could save money on daycare. (Undesignated date references are to the year 2011.) In March, Summers noticed bruises on Cisneros on multiple occasions. Summers wondered if Cruz was hurting Cisneros, but she dismissed the thought because Cruz acted liked everything was fine.
>
> According to Summers, Cruz treated Cisneros like his own son. Later that month, when Cisneros was approximately seven months old, Summers's neighbor saw Cruz outside holding Cisneros. Cruz was panicking and asking for help. The neighbor brought Cruz and Cisneros into his apartment and called 911. The neighbor's mother began performing CPR on Cisneros who was not breathing. Cisneros had swelling in the arms, chest and head area. He also had black, purple and green bruises on his legs, face, and chest.
>
> San Diego County Sheriff's Deputy Damon Chandler arrived at the neighbor's apartment before paramedics. Cruz was standing outside the apartment and told Deputy Chandler, "'Please help me. I don't know what's wrong with my baby.'" Deputy Chandler observed that Cisneros had "purple blotches" on his face and an abrasion under his chin. Deputy Chandler could not find a pulse on Cisneros and administered CPR until the paramedics arrived.
>
> Deputy Chandler tried to obtain information from Cruz regarding what happened to Cisneros. Cruz said he had given Cisneros formula, some solid baby food, and then put him down for a nap. When Cruz checked on Cisneros two hours later, Cisneros was unresponsive. Cruz stated he administered CPR for approximately 15 minutes.
>
> San Diego County Sheriff's Deputy Janine Alioto also responded to the scene. When she arrived, Deputy Alioto heard Cruz say, "'It's my fault. It's my fault.'" Cruz told her that while he was babysitting Cisneros, he heard a loud crash like shelves falling. Cruz further said that when he went into Cisneros's room, Cisneros was not moving.

> While she was at work, Summers received a call about her son. She rushed home to see what happened. When she got there, Cruz ran up to her, got down on his knees, and said, "'I'm sorry, I'm sorry, I'm sorry.'" Cruz told Summers that he was playing a video game in the living room when he heard a crash in Cisneros's room. Cruz stated that when he went in Cisneros's room, Cisneros was lying on his side.
>
> Summers saw Cisneros at the hospital. Cisneros had a large dark mark on his face like somebody had hit him. A doctor informed Summers that Cisneros was brain dead and could not be saved.
>
> That same night, deputies arrested Cruz. San Diego County Sheriff's Detective Donnie Sossaman interviewed Cruz at the Sheriff's station. Cruz stated that he got angry when Cisneros would not stop fussing. Cruz snatched Cisneros up and shook him. At that point, Cruz got scared because Cisneros's head snapped back. Cruz also stated that he had hit Cisneros in the stomach, causing Cisneros to fall off the couch and onto the floor. Cruz put Cisneros in his crib and noticed that Cisneros would not sit up. Thus, Cruz attempted to do CPR on Cisneros and slapped him to try to revive him. Cruz admitted to getting mad and shaking Cisneros on three occasions.
>
> An autopsy revealed that Cisneros had numerous bruises and abrasions on his face and body. He had multiple rib fractures that had occurred at different times and factures on the bones between his elbow and wrist. Cisneros also had multiple hemorrhages on the tissues below the surface of his scalp.
>
> The medical examiner classified Cisneros's death as a homicide. He stated the cause of death was brain damage resulting from a lack of oxygen and blood flow to the brain caused by head injury. A defense expert testified that it was possible that Cisneros died from an "ear infection that either spread to the blood and developed sepsis or caused thrombosis of the big vein in the head."

(Lodgment No. 6 at 2-4.)

## III. PROCEDURAL BACKGROUND

On January 4, 2012, Petitioner was charged by information with assault on a child by means of force likely to produce great bodily injury resulting in death (Cal. Penal Code § 273ab(a) (count one) and murder (Cal. Penal Code § 187(a) (count two). (Lodgment No. 1, vol. 1 at 5-6.)

///

On October 9, 2013, a jury found Cruz guilty on both counts. (Lodgment No. 1, vol. 2 at 307-08; Lodgment No. 2, vol. 5 at 961-62.) On November 22, 2013, the trial court sentenced Cruz to a prison term of 25 years-to-life.[2] (Lodgment No. 1, vol. 2 at 368, 427-28; Lodgment No. 2, vol. 6 at 990-91.)

Cruz appealed his conviction to the California Court of Appeal, arguing (1) the trial court erred in denying his request to represent himself; (2) California Penal Code section 237ab(a) improperly omits a mens rea element; and (3) section 237ab(a) violates the Equal Protection Clause and the Due Process Clause. (*See* Lodgment 3.) On May 20, 2015, the Court of Appeal denied Cruz's claims and affirmed his conviction in a reasoned opinion. (*See* Lodgment No. 6.) On June 8, 2015, Cruz filed a petition for review for in the California Supreme Court. (Lodgment No. 7.) The court denied the petition on July 29, 2015 without comment or citation. (Lodgment No. 8.)

Cruz then filed a petition for writ of habeas corpus with the San Diego Superior Court on July 1, 2016. (Lodgment No. 9.) In it, Petitioner argued (1) defense counsel had coerced him not to testify in his own defense, in violation of the Sixth Amendment, (2) the prosecutor used evidence to mislead the jury, (3) the trial was unfair because Cruz's initial interview with a detective was not presented to the jury and the evidence that was presented was improperly prejudicial, and (4) the trial court improperly denied his request to represent himself. (*See id.*) On July 12, 2016, the trial court denied the petition in a short opinion. (Lodgment No. 10.)

On December 16, 2016, Cruz filed the instant federal petition for writ of habeas corpus in this Court. (ECF No. 1.) Respondent filed an Answer and Memorandum of Points and Authorities on March 6, 2017. (ECF No. 12.) On March 27, 2017, Petitioner filed a Traverse. (ECF No. 15.) Cruz filed a supplemental Traverse on May 26, 2017. (ECF No. 19.) Respondent submitted Supplemental Lodgments under seal on June 29, 2017. (ECF No. 23.)

---

[2] The trial court sentenced Cruz to 25 years-to-life on count one and 15 years-to-life on count two. The court stayed the sentence on count two pursuant to Cal. Penal Code section 654. (*See* Lodgment No. 1, vol. 2 at 368, 427-28.)

## IV. STANDARD OF REVIEW

Cruz's Petition is governed by the provisions of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). *See Lindh v. Murphy*, 521 U.S. 320 (1997). Under AEDPA, a habeas petition will not be granted unless the adjudication: (1) resulted in a decision that was contrary to, or involved an unreasonable application of clearly established federal law; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented at the state court proceeding. 28 U.S.C. § 2254(d); *Early v. Packer*, 537 U.S. 3, 8 (2002).

A federal court is not called upon to decide whether it agrees with the state court's determination; rather, the court applies an extraordinarily deferential review, inquiring only whether the state court's decision was objectively unreasonable. *See Yarborough v. Gentry*, 540 U.S. 1, 4 (2003); *Medina v. Hornung*, 386 F.3d 872, 877 (9th Cir. 2004). In order to grant relief under § 2254(d)(2), a federal court "must be convinced that an appellate panel, applying the normal standards of appellate review, could not reasonably conclude that the finding is supported by the record." *See Taylor v. Maddox*, 366 F.3d 992, 1001 (9th Cir. 2004).

A federal habeas court may grant relief under the "contrary to" clause if the state court applied a rule different from the governing law set forth in Supreme Court cases, or if it decided a case differently than the Supreme Court on a set of materially indistinguishable facts. *See Bell v. Cone*, 535 U.S. 685, 694 (2002). The court may grant relief under the "unreasonable application" clause if the state court correctly identified the governing legal principle from Supreme Court decisions but unreasonably applied those decisions to the facts of a particular case. *Id*. Additionally, the "unreasonable application" clause requires that the state court decision be more than incorrect or erroneous; to warrant habeas relief, the state court's application of clearly established federal law must be "objectively unreasonable." *See Lockyer v. Andrade*, 538 U.S. 63, 75 (2003). "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Williams v. Taylor*, 529 U.S. 362, 411 (2000). "A state court's

determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)).

Where there is no reasoned decision from the state's highest court, the Court "looks through" to the underlying appellate court decision and presumes it provides the basis for the higher court's denial of a claim or claims. *See Ylst v. Nunnemaker*, 501 U.S. 797, 805-06 (1991). If the dispositive state court order does not "furnish a basis for its reasoning," federal habeas courts must conduct an independent review of the record to determine whether the state court's decision is contrary to, or an unreasonable application of, clearly established Supreme Court law. *See Delgado v. Lewis*, 223 F.3d 976, 982 (9th Cir. 2000) (overruled on other grounds by *Andrade*, 538 U.S. at 75-76); *accord Himes v. Thompson*, 336 F.3d 848, 853 (9th Cir. 2003). However, a state court need not cite Supreme Court precedent when resolving a habeas corpus claim. *See Early*, 537 U.S. at 8. "[S]o long as neither the reasoning nor the result of the state-court decision contradicts [Supreme Court precedent,]" the state court decision will not be "contrary to" clearly established federal law. *Id.* Clearly established federal law, for purposes of § 2254(d), means "the governing principle or principles set forth by the Supreme Court at the time the state court renders its decision." *Andrade*, 538 U.S. at 72.

## V. DISCUSSION

Cruz raises five claims in his Petition, however, because some of the claims overlap or are redundant, the Court has grouped them as two general claims. In claims one and three, Petitioner contends his conviction under California Penal Code section 243ab(a) was a violation of his due process rights because the statute fails to set forth a sufficient mens rea element. (Pet. at 6, ECF No. 1.) In claims two, four and five, Petitioner argues his Sixth Amendment rights were violated when the trial court denied his request to represent himself. (*Id.* at 6-7.) Cruz also asks for an evidentiary hearing. (*Id.* at 1.) Respondent argues both claims must be denied because Petitioner has failed to establish the state court's decision was contrary to, or an unreasonable application of, clearly established law. (*See generally*, P. & A. in Supp. Answer, ECF No. 10-1.)

### A. California Penal Code § 273ab(a)

In claims one and three, Cruz argues that California Penal Code section 273ab(a) lacked a sufficient "mens rea" requirement, in violation of the Due Process clause. He asserts that due process requires there be a mens rea that "bears some relationship to the penalty." (Pet. at 6, ECF No. 1.)

Cruz raised this claim in his petition for review to the California Supreme Court and it was denied without comment or citation. (Lodgment Nos. 7 & 8.) This Court therefore looks through to the last reasoned decision to address the claim – that of the California Court of Appeal. *See Ylst*, 501 U.S. at 805-06. The appellate court denied that claim, stating:

> Cruz argues his assault conviction violates due process because the offense does not have a requirement that the defendant know his act could result in death and thus it is an improper strict liability offense. In a related argument, he claims the trial court did not properly instruct the jury because CALCRIM No. 820, the instruction on assault on a child likely to produce great bodily injury resulting in death, did not require the jury to find that he knew or a reasonable person would have known his act was likely to result in death.
>
> Cruz was convicted of assault on a child with force likely to produce great bodily injury resulting in death in violation of Penal Code, section 237ab, subdivision (a) (section 237ab). That statute provides the following: "Any person who, having the care or custody of a child who is under eight years of age, assaults the child by means of force that to a reasonable person would be likely to produce great bodily injury, resulting in the child's death, shall be punished by imprisonment in the state prison for 25 years to life." Thus, a violation of section 237ab requires proof that (1) a person had the care or custody of a child under eight years of age; (2) that person committed an assault upon the child; (3) the assault was committed by means of force that to a reasonable person would be likely to produce great bodily injury; and (4) the assault resulted in the death of the child. (*People v. Albritton* (1998) 67 Cal.App.4th 647, 655 (*Albritton*); CALCRIM No. 820.)
>
> In *Albritton*, *supra*, 67 Cal.App.4th 647, this Court rejected the same argument that Cruz makes here, namely that section 237ab is an unconstitutional strict liability offense. We explained that "[s]ection 273ab is a general intent crime. The mens rea for the crime is willfully assaulting a child under eight years of age with force that objectively is likely to result in great bodily injury -- that is, the assault must be intentional." (*Albritton*, at p. 658.) We concluded that in order to violate section 273ab, "[o]nly a general criminal intent to commit the proscribed act -- assault on a child under eight years old with force that objectively is likely

to result in great bodily injury--is required. Whether the intended act in its nature is one likely to produce great bodily harm is a question for the jury. It is not required that the actor intend to produce great bodily injury or death, nor is it required that he know or should know the act is intrinsically capable of causing such consequences." (*Albritton*, at p. 659.)

Cruz asserts that due process requires the offense have a mens rea element associated with the death because the accused faces the same 25 years to life penalty as first degree murder. It is "immaterial that the punishment for a violation of section 273ab is the same as first degree murder. The Legislature exercised its prerogative in selecting the range of punishment, and there is no principle of law that precludes the same punishment for different crimes." (*People v. Norman* (2003) 109 Cal.App.4th 221, 228.)

Lastly, we reject Cruz's instructional error claim. He contends the jury instructions were incomplete because CALCRIM No. 820 did not include a requirement that he knew or a reasonable person would have known his act would result in death. As we explained, a violation of section 237ab does not require that the defendant knew his act would result in death. CALCRIM No. 820 properly instructs the jury that the People must prove the defendant committed the assault by means of force that to a reasonable person would be likely to produce great bodily injury. In that regard, the instruction requires the jury to find "[w]hen the defendant acted, he was aware of facts that would lead a reasonable person to realize that his act by its nature would directly and probably result in great bodily injury to the child." (CALCRIM No. 820.) No further knowledge element was required. Thus, Cruz's instructional error claim fails.

(Lodgment No. 6 at 10-13.)

First, to the extent Cruz contends his conviction under California Penal Code section 273ab(a) amounted to a violation of California state law, he fails to state a cognizable claim on federal habeas. *See Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) (finding issues regarding state law are not cognizable on federal habeas corpus review and it is not the province of the federal habeas court to re-examine state-court determinations on state-law questions).

To the extent Cruz argues section 273ab(a) runs afoul of the Due Process Clause, his claim fails. Under California law, to prove assault against a child resulting in death, the prosecutor must introduce evidence satisfying the following four elements: "(1) [a] person had the care and custody of a child under eight years of age; (2) [t]hat person committed an assault upon the child; (3) [t]he assault was committed by means of force that to a reasonable person would be likely to produce great bodily injury; and (4) [t]he assault resulted in the death of the child." *People v. Stewart*, 77 Cal. App. 4th 785, 794 (Cal. Ct. App. 2000) (internal quotations

omitted); *People v. Wyatt*, 48 Cal. 4th 776, 780 (Cal. 2010).

Contrary to Petitioner's assertion, section 273ab(a) contains a mens rea element. As the state court noted, the statute requires general intent – specifically, intent to commit assault on a child under the age of eight with use of force objectively likely to produce great bodily injury. *People v. Albritton*, 67 Cal. App. 4th 647, 658-59 (Cal. Ct. App. 1998). Under section 273ab a defendant "need not know or be subjectively aware that his act is capable of causing great bodily injury. This means the requisite mens rea may be found even when the defendant honestly believes his act is not likely to result in such injury." *Wyatt*, 48 Cal.4th at 781 (citations omitted). On habeas, federal courts must defer to a state court's interpretation of state law, except in the "highly unusual case in which the 'interpretation is clearly untenable and amounts to a subterfuge to avoid federal review' of a constitutional violation." *Butler v. Curry*, 528 F.3d 624, 642 (9th Cir. 2008) (quoting *Knapp v. Cardwell*, 667 F.2d 1253, 1260 (9th Cir.1982); *see Mullaney v. Wilbur*, 421 U.S. 684, 691 n. 11 (1975). Here, the state court's interpretation of section 273ab and its mens rea requirement is not unreasonable.[3]

Petitioner also argues his right to due process was violated because section 273ab allows imposition of the same punishment as that for first degree murder (25 years to life) without proof of the same mens rea required to support a murder conviction. (*See* Pet. at 5-6, 12-17, ECF No. 1.) State legislatures have broad authority to define crimes and impose punishments. "The elements of a state crime are determined by state law, and state legislatures have broad discretion to define the elements of a crime." *Medley v. Runnels*, 506 F.3d 857, 865 (9th Cir. 2007) (citing *Patterson v. New York*, 432 U.S. 197, 208-09 (1977)); *see also*, *e.g.*, *Brecht v. Abrahamson*, 507 U.S. 619, 635 (1993) (quoting *Engle v. Isaac*, 456 U.S. 107, 128 (1982)). The Due Process Clause prevents only imposition of punishments based on "arbitrary" distinctions. *See Chapman v. United States*, 500 U.S. 453, 465 (1991).

When a State's power to define criminal conduct is challenged under the Due Process Clause, courts consider only whether the law "offends some principle of justice so rooted in the

---

[3] Even if the statute did not contain a mens rea element, Cruz would not be entitled to habeas relief. "There is no clearly established Supreme Court law defining the precise criteria courts should employ in determining which crimes constitutionally require a mental element and which crimes do not." *Hujazi v. Superior Court of California*, 890 F.Supp. 2d 1226, 1237 (C.D. Cal. 2012) (citing *Morissette v. United States*, 342 U.S. 246, 260 (1952)); *see also Powell v. State of Texas*, 392 U.S. 514, 535 (1968).

9

traditions and conscience of our people as to be ranked as fundamental." *Patterson*, 432 U.S. at 202 (internal quotation marks omitted). *Montana v. Egelhoff*, 518 U.S. 37, 58 (1996) (Ginsburg, J., concurring). Here, establishing the same penalty for assault on a child resulting in death as that of first degree murder does not amount to an "arbitrary distinction," nor does it offend fundamental principles of justice. As such, Cruz has failed to establish a due process violation.

In sum, the California Court of Appeal's denial of the claim was neither contrary to, nor an unreasonable application of controlling federal authority. *See* 28 U.S.C. § 2254(d)(1), *Williams*, 529 U.S. at 407-08. The Court **RECOMMENDS** grounds one and three be **DENIED**.

### B. *Faretta* Motion

In grounds two, four and five, Cruz argues his Sixth Amendment rights were violated when the trial court denied his request to represent himself. (*See* Pet. at 5-6, 17-21, ECF No. 1.) Cruz raised this issue in his petition for review to the California Supreme Court, which was denied without comment or citation. (*See* Lodgment Nos. 7 & 8.) As such, this Court looks through to the opinion of the California Court of Appeal, the last reasoned state court decision to address this issue. *See Ylst*, 501 U.S. at 805-06. The appellate court denied the claim, stating:

> A. Facts
>
> One month before trial, defense counsel informed the court that Cruz wished to bring a motion for substitution of appointed counsel under *People v. Marsden* (1970) 2 Cal.3d 118 (*Marsden*). The trial court conducted a *Marsden* hearing outside the presence of the prosecutor. Cruz complained that defense counsel refused to call a character witness and continuously told him to take a plea deal. Cruz thought defense counsel was not acting in Cruz's best interest. When the court inquired if Cruz had other complaints, Cruz responded, "There's not really much I can say to deter your mind. It seems like your mind is set up that I have a pretty good lawyer, even though I feel otherwise."
>
> Defense counsel responded to Cruz's allegations, explaining that he informed Cruz of the tactical dangers of opening the door to negative character evidence. Defense counsel indicated he conferred with multiple colleagues who all agreed that the defense should not open the door to character evidence. Defense counsel also stated he continued to discuss the possibility of a plea agreement with Cruz because of the mounting evidence against Cruz. Counsel believed a plea deal was in Cruz's best interest based on the charges and evidence in the case.

10

16cv3106 AJB(BLM)

The trial court denied the *Marsden* motion, explaining that defense counsel was doing a great job and using "Herculean efforts" to represent Cruz. The court stated it did not find any shortcomings in defense counsel's advice to Cruz. Shortly thereafter, defense counsel informed the court that Cruz wanted to address the court about representing himself. Defense counsel stated it was the first time Cruz had made the request.

The court instructed Cruz to fill out an "Acknowledgement Regarding Self-Representation and Waiver of Right to Counsel" pursuant to *People v. Lopez* (1977) 71 Cal.App.3d 568 (*Lopez* waiver). Cruz completed the *Lopez* waiver, stating that he wanted to represent himself and acknowledging the dangers and disadvantages of self-representation.

After receiving Cruz's *Lopez* waiver, the court confirmed with Cruz that this was the first time he was seeking to represent himself and commented the case was two and a half years old. The court then inquired whether Cruz would be ready to proceed with trial at the scheduled date, which was in approximately one month. Cruz stated that he would not be ready to proceed and needed time to research. Cruz agreed with the court that they would be "starting from scratch timewise."

The court denied Cruz's *Faretta* motion, stating, "[N]ow, virtually at the last minute, and certainly comparatively the last minute, the defendant is making a request that he's never made before and he's making it immediately after his request to relieve his attorney was denied which causes [the court] to question whether or not this is an unequivocal request. [The court does not] think that it is. [The court] think[s] it's a result of 'if I can't get rid of this attorney, then I'll represent myself.' That's not unequivocal." The court also found the request was not timely made because the case was two and a half years old, Cruz would not be ready for trial on the date set and Cruz required a continuance of undetermined length.

B. Analysis

Cruz contends the trial court erred in denying his pretrial *Faretta* motion. We disagree. A criminal defendant has the right under the Sixth Amendment of the federal Constitution to conduct his or her own defense. (*Faretta*, supra, 422 U.S. at p. 819; *People v. Jenkins* (2000) 22 Cal.4th 900, 959.) Accordingly, when a defendant voluntarily and intelligently makes a timely, unequivocal assertion of the right to proceed pro se, the court must honor that request regardless of how unwise the decision may seem. (*People v. Windham* (1977) 19 Cal.3d 121, 127-128.) The right to self-representation must be invoked within a reasonable time before the commencement of trial and the trial court should consider the quality of counsel's representation of the defendant, the defendant's prior proclivity to substitute counsel, the reasons for the request, the length and stage of the proceedings, and the disruption or delay that might reasonably be expected to

follow the granting of such a motion. (*People v. Marshall* (1996) 13 Cal.4th 799, 827.)

To determine whether the defendant invoked the right to self-representation, we review the entire record, including facts following the *Faretta* ruling, de novo. Even if the trial court denied the request for an improper reason, if the record as a whole establishes the request would properly be denied on other grounds, we will nonetheless affirm the judgment. (*People v. Dent* (2003) 30 Cal.4th 213, 218.)

1. Timeliness Requirement

A *Faretta* motion is timely if made "within a reasonable time prior to the commencement of trial." (*People v. Windham*, supra, 19 Cal.3d at p. 128; *People v. Clark* (1992) 3 Cal.4th 41, 98-99.) In California, there is no bright-line test for determining the timeliness of a *Faretta* motion. (*People v. Clark*, at p. 99.) However, courts have held that *Faretta* motions with a request for continuance were untimely when made shortly before commencement of trial, subject to the court's discretion. (*People v. Frierson* (1991) 53 Cal.3d 730, 740, 742; *People v. Burton* (1989) 48 Cal.3d 843, 853; *People v. Moore* (1988) 47 Cal.3d 63, 78-79; *People v. Scott* (2001) 91 Cal.App.4th 1197, 1205; *People v. Hill* (1983) 148 Cal.App.3d 744, 757; *People v. Ruiz* (1983) 142 Cal.App.3d 780, 784-791; *People v. Morgan* (1980) 101 Cal.App.3d 523, 531; *People v. Hall* (1978) 87 Cal.App.3d 125, 132.)

Here, Cruz made his *Faretta* motion approximately one month prior to trial, an amount of time that was certainly not untimely on its face. However, Cruz stated that he would not be ready to start trial in one month as he needed time to research. He did not offer the court a specific date when he would be ready and agreed with the court that they would be "starting from scratch timewise." At that point, the case was two and a half years old. On this record, we conclude the trial court did not err in denying the *Faretta* motion as granting it would have interfered with the orderly administration of justice.

2. Unequivocal Requirement

The requirement that a *Faretta* motion be unequivocal "is necessary in order to protect the courts against clever defendants who attempt to build reversible error into the record by making an equivocal request for self-representation." (*People v. Williams* (2003) 110 Cal.App.4th 1577, 1586.) To determine whether a request was unequivocal, a reviewing court should examine a defendant's words and conduct to decide whether that defendant truly desired to give up counsel and represent himself or herself. (*People v. Marshall* (1997) 15 Cal.4th 1, 25-26 (*Marshall*).) "Equivocation of the right of self-representation may occur where the defendant tries to manipulate the proceedings by switching between requests for counsel and for self-representation, or where such actions are the product of whim

12

or frustration." (*People v. Lewis and Oliver* (2006) 39 Cal.4th 970, 1002.)

A *Faretta* motion made "in passing anger or frustration" or "to frustrate the orderly administration of justice" is not unequivocal and may be denied. (*Marshall*, supra, 15 Cal.4th at p. 23.) Moreover, a *Faretta* motion made immediately following an unsuccessful *Marsden* motion may be seen as equivocal if the circumstances show the defendant's true desire was actually different representation and not self-representation. (*See People v. Valdez* (2004) 32 Cal.4th 73, 99 [defendant's single reference to right of self-representation, made immediately following denial of *Marsden* motion, supports conclusion that defendant did not make an unequivocal *Faretta* motion]; *People v. Scott* (2001) 91 Cal.App.4th 1197, 1203-1206 [*Faretta* motion was equivocal where defendant made the motion immediately after the trial court denied his *Marsden* motion and defendant's comments suggested he made the motion because the court would not replace his attorney with a different public defender].)

Here, in light of the totality of the circumstances, Cruz's *Faretta* motion could be seen as equivocal. He sought self-representation after the trial court denied his *Marsden* motion to substitute appointed counsel. It was clear that Cruz was frustrated with the court during the *Marsden* hearing. Even before the court made its ruling, Cruz was perturbed, commenting that the court had already made up its mind and there was nothing he could do to change it.

Cruz's emotional response "'did not demonstrate to a reasonable certainty that he in fact wished to represent himself.'" (*Marshall*, *supra*, 15 Cal.4th at p. 22.)

Cruz's *Lopez* waiver does not convince us that his request was unequivocal. Although he completed the waiver, he did so immediately after the court denied his *Marsden* motion and he expressed frustration with the court. The test of a valid waiver of counsel is not whether the defendant completed a particular form and received specific advisements; rather, the record as a whole must demonstrate that defendant truly desired to represent himself. (*People v. Bloom* (1989) 48 Cal.3d 1194, 1225; *Marshall*, supra, 15 Cal.4th at pp. 25-26.) Cruz had never before requested to represent himself and did not renew the motion at any time after the court denied it. (See *People v. Hines* (1997) 15 Cal.4th 997, 1028, [noting that a "self-representation request that was an 'impulsive response' to the trial court's denial of the defendant's motion for substitute counsel and was not renewed at a later court date was not unequivocal"].) Based on the record before us, it appears that Cruz's *Faretta* motion resulted from his "passing anger or frustration." (*People v. Butler* (2009) 47 Cal.4th 814, 825.) Accordingly, we conclude the trial court did not err in denying Cruz's request for self-representation.

(Lodgment No. 6 at 4-10.)

13

16cv3106 AJB(BLM)

The Sixth Amendment to the United States Constitution guarantees a defendant in a criminal case the right to be represented by counsel. *Faretta v. California*, 422 U.S. 806, 807 (1975). The Sixth and Fourteenth Amendments also guarantee a defendant the right to represent himself, but in order to invoke this right, a defendant must waive his Sixth Amendment right to counsel. *See id.* at 835. That waiver must be "knowing, voluntary and intelligent." *Iowa v. Tovar*, 541 U.S. 77, 88 (2004) (citing *Johnson v. Zerbst*, 304 U.S. 458, 464 (1938)). Moreover, a *Faretta* request for self-representation must be timely, unequivocal, and not made for purposes of delay. *Stenson v. Lambert*, 504 F.3d 873, 882 (9th Cir. 2007); *see also McCormick v. Adams*, 621 F.3d 970, 975 (9th Cir. 2010).

Here, the California Court of Appeal concluded that Cruz's request for self-representation was equivocal and untimely. When a state court concludes that a *Faretta* request was equivocal, a federal habeas court must determine whether that decision was an unreasonable determination of the facts. *Woods v. Sinclair*, 764 F.3d 1109, 1123 (9th Cir. 2014); *Stenson*, 504 F.3d at 883. In doing so, federal courts examine three factors: "the timing of the request, the manner in which the request was made, and whether the defendant repeatedly made the request." *Stenson,* 504 F.3d at 882.

In applying these factors, a federal habeas court "must give significant deference to the trial court's factual findings." *Id.* (citing 28 U.S.C. § 2254(e)(1).) As such, Cruz's burden here is not to convince this Court that his request was unequivocal, but that the state court's finding otherwise was "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." *Id.* at 883.

After considering the record as a whole, the California Court of Appeal concluded that Cruz's request was equivocal. The court noted that Cruz made his request immediately after the trial court denied his *Marsden* motion to substitute counsel. (Lodgment No. 2, vol. 1 at 32-33.) During the *Marsden* hearing, Cruz expressed frustration with defense counsel's decision not to call a character witness at trial. (Supp. Lodgment at 13-15.) Cruz also stated that he was dismayed that defense counsel advised him to consider taking a plea deal. (*Id.* at 15-16.) After hearing from defense counsel, however, the trial court concluded Cruz's counsel was

14

providing "great representation" and that there were no shortcomings in the advice defense counsel was providing Cruz. (*Id.* at 29.) The court stated that "the only conclusion I can reach is that you don't like your predicament, but you're in that predicament." (*Id.* at 29-30.)

Immediately following the denial of his *Marsden* motion, Cruz made his *Faretta* motion. (Lodgment No. 2, vol. 1 at 31.) As the trial court noted, at that point, the case was two-and-a-half years old and was set to go to trial in 30 days. (*Id.* at 34-35.) Cruz acknowledged he would need a continuance if the motion was granted. (*Id.* at 35.) The trial court then stated:

> What concerns me is now, the length of age of this case. The complexity is not really a factor because a person has a constitutional right to represent themselves no matter what the complexity of the case is, but in this instance, it's been around for two and a half years. And now, virtually at the last minute, and certainly comparatively the last minute, the defendant is making a request that he's never made before and he's making it immediately after his request to relieve his attorney was denied which causes me to question whether or not this is an unequivocal request. I don't think that it is. I think it's a result of "If I can't get rid of this attorney, then I'll represent myself." That's not unequivocal.
>
> The other considerations, and we discussed this during the *Marsden* hearing, the quality of representation afforded to the defendant which he has received, the reasons for the request don't speak well in his favor because of the denial of the *Marsden* motion. The fact that his matter has been around for two and a half years and the indication from the defendant that he would not be prepared for trial on the date set and would require an additional continuance of an undermined length.
>
> For those reasons, I find that the request is not timely, is not made unequivocally and is therefore denied.

(Lodgment No. 2, vol. 1 at 35-36.)

Nothing in this case suggests that the state court's conclusion that Cruz's request was equivocal was based on an unreasonable determination of the facts or an unreasonable application of federal law. As for the timing of the request, the Ninth Circuit has held that a relevant consideration in evaluating the equivocal nature of the request is whether the defendant made it "in the context of a substitution motion." *See Wafer v. Hedgpeth*, 627 Fed. Appx. 586, 587 (9th Cir. 2015); *Stenson*, 504 F.3d at 883 ("A clear preference for receiving new counsel over representing oneself [may] be an indication that the request, in light of the record as whole,

is equivocal.") When the record shows that a defendant's assertion that he wishes to represent himself was made as an emotional or impulsive response to a trial court ruling, it is not unequivocal. *Jackson v. Ylst*, 921 F.2d 882, 888 (9th Cir. 1990). Here, given the timing of Cruz's request, the trial court reasonably determined it arose out of Cruz's dissatisfaction with counsel, the desire for a new attorney, and in response to the denial of his *Marsden* motion. Cruz's clear preference was appointment of new counsel. Cruz had never before asked to represent himself and did not renew his request in the weeks leading up to his trial. (*See* Lodgment No. 2, vol. 1 at 34.) The trial court, which was in the best position to assess the context of Cruz's words, reasonably concluded he did not really want to represent himself.[4] *See United States v. Mendez-Sanchez*, 563 F.3d 935, 939 (9th Cir. 2009) (concluding that "a request to represent oneself made while at the same time stating a preference for representation by a different lawyer and rearguing the change of counsel motion is insufficient to invoke *Faretta*").

When Cruz's request to represent himself is considered in the context of the entire record, the state court's conclusion that the request was equivocal is neither contrary to, nor an unreasonable application of, clearly established law. 28 U.S.C. § 2254(d)(1), *Williams*, 529 U.S. at 407-08. Moreover, the state court's decision was not based on an unreasonable determinationof the facts. 28 U.S.C. § 2254(d)(2), *see also Stenson,* 504 F.3d at 883. The Court therefore **RECOMMENDS** claims two, four and five be **DENIED.**

### C. Request for Evidentiary Hearing

Cruz asks this Court to conduct an evidentiary hearing on his claims. (*See* Pet. at 1, ECF No. 1.) Cruz does not, however, identify what evidence, if any, he intends to present.

Petitioner's request is foreclosed by the Supreme Court's decision in *Cullen v. Pinholster*, 563 U.S. –, 131 S.Ct. 1388 (2011). There, the Supreme Court held that where habeas claims have been decided on their merits in state court, a federal court's review under 28 U.S.C.§ 2254(d)(1) – whether the state court determination was contrary to or an unreasonable

---

[4] Having concluded that the state court reasonably found Cruz's *Faretta* request to be equivocal, this Court need not address the timeliness of the request. *See Stenson*, 504 F.3d at 882.

16

1 application of established federal law – must be confined to the record that was before the state
2 court. *Pinholster*, 131 S.Ct. at 1398. The Court specifically found that the district court should
3 not have held an evidentiary hearing regarding Pinholster's claims of ineffective assistance of
4 counsel until after the Court determined that the petition survived review under section
5 2254(d)(1). *Id.* at 1398; *see also Gonzalez v. Wong*, 667 F.3d 965, 979 (9th Cir. 2011).

Here, for the reasons discussed in Sections IV(A)-(B) of this Report and Recommendation, none of Petitioner's claims survive review under section 2254(d). The Ninth Circuit has stated that "an evidentiary hearing is pointless once the district court has determined that § 2254(d) precludes habeas relief." *Sully v. Ayers*, 725 F.3d 1057, 1075–76 (9th Cir. 2013). Accordingly, Petitioner's request for an evidentiary hearing is **DENIED**.

## VI. CONCLUSION AND RECOMMENDATION

The Court submits this Report and Recommendation to United States District Judge Anthony J. Battaglia under 28 U.S.C. § 636(b)(1) and Local Civil Rule HC.2 of the United States District Court for the Southern District of California. For the reasons outlined above, the Court **DENIES** Petitioner's request for an evidentiary hearing.

In addition, **IT IS HEREBY RECOMMENDED** that the Court issue an Order: (1) approving and adopting this Report and Recommendation, and (2) directing that Judgment be entered **DENYING** the Petition.

**IT IS HEREBY ORDERED** that any party to this action may file written objections with the Court and serve a copy on all parties no later than **September 11, 2017**. The document should be captioned "Objections to Report and Recommendation."

///
///
///
///
///
///
///

**IT IS FURTHER ORDERED** that any Reply to the Objections shall be filed with the Court and served on all parties no later than **October 2, 2017**. The parties are advised that failure to file objections within the specified time may waive the right to raise those objections on appeal of the Court's Order. *See Turner v. Duncan*, 158 F.3d 449, 455 (9th Cir. 1998); *Martinez v. Ylst*, 951 F.2d 1153, 1157 (9th Cir. 1991).

Dated: 8/14/2017

*(signature)*
Hon. Barbara L. Major
United States Magistrate Judge